# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| RONALD LYNN WADSWORTH, ) | | |
| ID # 09085522, ) | | |
|     Plaintiff, ) | | |
| vs. ) | No. 3:10-CV-0219-G-BH | |
| ) | | |
| ZIA REHMAN, M.D., ) | | |
|     Defendant. ) | Referred for Pretrial Management | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case was referred for pretrial management. Before the Court is *Defendant's Motion for Summary Judgment on Issue of Qualified Immunity* ("Mot."), received June 7, 2010, (doc. 17). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

Plaintiff, a pretrial detainee in the Dallas County Jail, sues Dr. Zia Rehman under 42 U.S.C. § 1983 for alleged denial of medical care. (Compl. at 3, 6-7;[1] Magistrate Judge's Questionnaire Answers ("MJQ"),[2] Ans. 3.)

Dr. Rehman is a staff physician assigned to a clinic at the Dallas County Jail. (Aff. Rehman at 2-3, attached to Def.'s App.) He provides medical services for approximately five hundred inmates who have been determined to be healthy or to have stable chronic conditions through a Central Intake Health Screening or Assessment process that does not involve him. (*Id.* at 3.) Unless an inmate in the Dallas County Jail has a scheduled appointment, the inmate must submit a sick call

---

[1] Two pages attached to the five-page form complaint (numbered page 4 by Plaintiff) are referred to as pages 6 and 7.

[2] Plaintiff's answers to the questions posed by the Court constitute an amendment to the filed complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

request or "kite" to be seen by a physician. (*Id.* at 5.) A triage system that does not include Dr. Rehman is used to review those requests to decide if the inmate needs to be seen by a doctor. (*Id.* at 5-6.)

Plaintiff arrived at the Dallas County Jail on November 6, 2009, with a pain prescription (Vicodin) and a preliminary diagnosis of lymphoma from a jail physician in Tarrant County that saw him prior to his transfer to Dallas County. (Pl.'s Resp. at 4; Compl. at 6.)[3] He claims that during intake, Dr. Rehman refused his plea for assistance and ordered no records, x-rays, or "actual" pain medication. (Compl. at 3; MJQ, Ans. 3.) He explained his medical problems, i.e., nodules in his lungs and lower back problems from blunt force trauma received on June 16, 2009, to an unidentified intake interviewer. (Compl. at 6.) He claims he saw Dr. Rehman nine hours later, and he only inquired about his cancer and prescribed Motrin even though Plaintiff told him he could not take that medication. (*Id.*) Plaintiff refused the medication when it was delivered between November 6 and 16, 2009. (Pl.'s Resp. at 9.)

The medical records reflect that Dr. Rehman saw Plaintiff as a patient on November 16, 2009, when Plaintiff was brought to the clinic for back pain. (Aff. Rehman at 4; *see also* Chronic Clinic Note dated Nov. 16, 2009, attached as Ex. A to Aff.) Plaintiff complained of increased back pain with movement and bending and told Dr. Rehman that he had lung cancer and hypertension. (Aff. Rehman at 4-5; Ex. A.) Plaintiff told Dr. Rehman that he could not take Motrin, that Parkland medical records showed that Motrin caused swelling in his legs and increases his liver enzymes, and that some medical records showed him to be allergic to Motrin. (Pl.'s Resp. at 8-9.) Computerized

---

[3] Because his original complaint, answers to the MJQ, and response to the summary judgment motion are verified, these filings may serve as competent summary judgment evidence to the extent they meet the requirements of Rule 56(e). *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994); *Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006).

medical records in a Central Data Repository show no cancer diagnosis or treatment for cancer, only an abnormal chest x-ray. (Aff. Rehman at 5; Ex. A.) After examining Plaintiff and reviewing his medical history, Dr. Rehman ordered anti-hypertension medication (Clonidine), renewed the existing prescription for Motrin, prescribed a non-narcotic medication for pain (Gabapentin, a.k.a. Neurontin), and ordered a follow-up in thirty days. (Aff. Rehman at 4-5; Ex. A.) This is the standard protocol for treating a new patient with complaints of chronic back pain. (Aff. Rehman at 5.) Plaintiff was given an opportunity to ask questions and stated that he understood the treatment plan. (Ex. A.)

At his follow-up on December 22, 2009, Plaintiff made the same complaints as on November 16, 2009, stated that the current treatment was only partially effective, and requested a prescription for a narcotic pain medication – Lortab, a.k.a. hydrocone. (Aff. Rehman at 6; *see also* Chronic Clinic Note dated Dec. 22, 2009, attached as Ex. B to Aff.) He explained that his blood pressure was high because of his pain. (MJQ, Ans. 3.) Dr. Rehman told him that neither his medical history nor his current physical evaluation justified Lortab. (Aff. Rehman at 6-7.) When the doctor suggested a non-narcotic muscle relaxer (Baclofen) with increased dosage of Neurontin, Plaintiff angrily stated he wanted Lortab. (*Id.* at 7.) Dr. Rehman did not view narcotic pain medication to be in Plaintiff's best interest at that time because of a known history of heroin addiction. (*Id.* at 7.) Plaintiff ultimately agreed to try Baclofen with the increased dosage of Neurontin. (*Id.*) Dr. Rehman changed Plaintiff's prescription for hypertension to Norvasc, prescribed Baclofen, increased the dosage of Neurontin, and ordered a follow-up in one month. (Ex. B.)

Dr. Rehman has not seen Plaintiff as a patient since December 22, 2009. (Aff. Rehman at 7.) Had Plaintiff returned to him with continued complaints of back pain after a reasonable trial of the prescribed treatment, the doctor would have considered different or additional pain medication

3

depending on Plaintiff's whole clinical picture. (*Id.*)

On December 29, 2009, Plaintiff's "sciatic nerve became pinched", and he was moved to a different floor where he saw a different doctor who started him on new medication before transferring him to the infirmary. (Compl. at 7.) X-rays were immediately ordered, which led to an MRI and CAT and PET scans. (*Id.*) Surgery was ordered for degenerative disc disease and injuries from alleged excessive force during arrest. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(2).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evi-

dence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id.* at 255, neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### III. QUALIFIED IMMUNITY

Dr. Rehman moves for summary judgment on grounds that he is protected from suit by qualified immunity. (*See* Defs.' Br. at 2-9.)

A governmental employee who is sued under 42 U.S.C. § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified im-

5

munity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances of the case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of*

*Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To satisfy that burden on a motion for summary judgment, the plaintiff must produce evidence showing that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation.  *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).  Even *pro se* litigants must adhere to the requirement that they oppose summary judgment in accordance with Fed. R. Civ. P. 56(e).  *See Gordon v. Watson*, 622 F.2d 120, 122-23 (5th Cir. 1980).

A. **Constitutional Violation**

Defendant moves for summary judgment on grounds that the evidence shows that he did not violate Plaintiff's constitutional rights by denying him medical care.  (Defs.' Br. at 5-9.)

The Fourteenth Amendment of the Constitution requires humane conditions of confinement for pretrial detainees, including adequate medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).[4]  Prison officials violate this requirement only when (1) the deprivation is "objectively, 'sufficiently serious'" in that the alleged act or omission results "in the denial of 'the minimal civilized measure of life's necessities'" and (2) the official had "a 'sufficiently culpable state of mind.'"  *Id.* at 834 (citations omitted).  The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the second component, the officials must be deliberately indifferent "to a sub-

---

[4] A pretrial detainee's constitutional rights related to conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" rather than from the prohibition against cruel and unusual punishment contained within the Eighth Amendment.  *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  Since basic human needs such as medical care are the same for pretrial detainees and convicted inmates, however, the standards are the same under both amendments.  *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

7

stantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Similar conduct includes intentionally "delaying access to medical care" and "interfering with treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In contrast, a failure to provide additional treatment may show medical malpractice but not deliberate indifference; decisions to provide additional treatment are matters of medical judgment. *Id.* at 107. Neither an incorrect diagnosis, *Domino*, 239 F.3d at 756, nor a plaintiff's disagreement with medical treatment, *Gobert*, 463 F.3d at 346; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), state a claim. *See also Estelle*, 429 U.S. at 107-08.

   1. *Sufficiently Serious Deprivation*

Dr. Rehman has provided summary judgment evidence showing that contrary to Plaintiff's allegation of indifference to a cancer diagnosis, he reviewed the medical record and found neither a cancer diagnosis nor treatment for cancer. He also provides evidence showing that Plaintiff sought relief for back pain, and that Plaintiff received a prescription for Motrin on November 6, 2009, and

8

increasing levels of pain medication on November 16 and December 22, 2009. This evidence is not disputed. Dr. Rehman has met his summary judgment burden.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact concerning the existence of a sufficiently serious deprivation of medical care to state a constitutional violation. In his verified complaint and MJQ, Plaintiff states that Dr. Rehman did not order x-rays or records or listen to his chest. (*See* Compl. at 3-7; MJQ, Ans. 3.) He states that the treatment he received was insufficient to satisfy the Constitution because it did not alleviate his pain, and he points to treatment ordered in February and April 2010 as proper responses to his pain allegations. (*See* Pl.'s Resp. at 1-2, 6-7.) Medical records from February 2010 show that Dr. Abraham Safeek of the Dallas County Jail assessed Plaintiff with (1) chronic obstructive pulmonary disease ("COPD") and pulmonary nodules; (2) herniated discs in the back with radiculopathy; (3) hypertension; and (4) a gastrointestinal ("GI") condition. (*See* Infirmary Provider Note dated Feb. 18, 2010, attached as Ex. A to Pl.'s Am. Compl. which is attached to Pl.'s Mot. for Leave to Amend, doc. 32.)[5] The record shows that a follow-up CAT scan had already been ordered; a follow-up MRI and chronic care provider visit were ordered; prescriptions of Neurontin, Lortab, and Norvasc were continued; and Nexium was prescribed for Plaintiff's GI condition. (*Id.*) Plaintiff also states that Dr. Porsa of Parkland Jail and Health prescribed needed pain medications in April 2010.

Although Plaintiff contends that Dr. Rehman should have ordered the same treatment as Drs. Safeek and Porsa, their treatment of him in February and April 2010 does not raise a genuine issue of material fact as to the existence of a sufficiently serious deprivation of medical care by Dr.

---

[5] Plaintiff refers to this medical record in his response to the motion for summary judgment but provides it with his proposed amended complaint.

Rehman in November and December, 2009. The records show that they had access to the medical information presented to Dr. Rehman and the results from his course of treatment. A subsequent and different course of treatment is consistent with Dr. Rehman's statement that he considers different or additional pain medication when a course of treatment is not obtaining desired results. The undisputed summary judgment evidence shows that Dr. Rehman provided treatment for Plaintiff's complaints. Plaintiff has not pointed to any summary judgment evidence creating a genuine fact issue as to whether the doctor's conduct constitutes a sufficiently serious deprivation of medical care required to state a constitutional violation.[6]

## 2. *Deliberate Indifference*

Dr. Rehman has also provided summary judgment evidence showing he relied on his medical judgment to prescribe the best course of treatment based on Plaintiff's medical history and current physical evaluations.

Plaintiff has not met his burden to identify summary judgment evidence creating a genuine issue of material fact as to whether Dr. Rehman refused to treat him or ignored his complaints of pain. Although Plaintiff contends that Dr. Rehman intentionally treated him incorrectly when he prescribed Motrin with knowledge that he could not take it (Pl.'s Resp. at 8-9), he has not pointed to evidence showing that he faced a substantial risk of serious harm from that conduct. Although Plaintiff claims he told Dr. Rehman that his prior medical records showed that Motrin would cause him leg swelling and increased liver enzymes, he has neither submitted medical records to corroborate a diagnosis of those side-effects nor presented admissible evidence that prescribing Motrin posed

---

[6] Plaintiff also proffers an affidavit of Derry Jones, another inmate at the Dallas County Jail, who avers that he received improper treatment while under the care of Dr. Rehman. (*See* Aff. Jones, attached to Pl.'s Resp.) The fact that another inmate received improper treatment does not create a factual issue as to whether Dr. Rehman's treatment of Plaintiff constitutes a sufficiently serious deprivation of medical care.

10

an excessive risk to his health that Dr. Rehman knowingly disregarded.  Plaintiff has not pointed to evidence in the record of Dr. Rehman's wanton disregard for any serious medical need.

Although the summary judgment evidence shows that Dr. Rehman's actions did not relieve Plaintiff's pre-existing back pain, Plaintiff has not identified any evidence creating a genuine issue of material fact as whether he was deliberately indifferent.  While Plaintiff "may not have received the amount of treatment he felt necessary, such a claim constitutes a disagreement with medical staff, which is not actionable in a § 1983 proceeding." *Haddix v. Kerss*, 203 F. App'x 551, 553 (5th Cir. 2006); *accord Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  The extent of treatment provided is "a matter of medical judgment" that does not violate the Constitution. *Estelle*, 429 U.S. at 107.

Because Plaintiff has failed to identify a genuine issue of material fact as to whether Dr. Rehman violated his constitutional rights by depriving him of medical care, the doctor is protected by qualified immunity, and summary judgment is warranted.

## IV. RECOMMENDATION

*Defendant's Motion for Summary Judgment on Issue of Qualified Immunity*, received June 7, 2010, (doc. 17) should be **GRANTED**.

**SO RECOMMENDED on this 25th day of September, 2010.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                                            IRMA CARRILLO RAMIREZ
                                                                                           UNITED STATES MAGISTRATE JUDGE